COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


THOMAS LANGSTON

v.      Record No. 1946-94-2          MEMORANDUM OPINION[*] BY
                                        JUDGE MARVIN F. COLE
COMMONWEALTH OF VIRGINIA                 MARCH 12, 1996


FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
Robert G. O'Hara, Jr., Judge

H. Lee Townsend, III (Townsend & Bloom,
P.L.L.C., on brief), for appellant.

Thomas D. Bagwell, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Thomas Langston (appellant) was convicted of attempted rape, attempted sodomy, and willful injury to a correctional facility employee in a jury trial. On appeal, appellant contends that the trial court erred in (1) refusing to remove jurors Fields, Powell, Mason and Manning for cause, and (2) refusing to give the jury his proffered consent instruction. Finding no error, we affirm.

## I. FACTS

On March 17, 1993, Linda Coleman, a correctional officer at Greensville Correctional Center (GCC), went to the visiting room to get a soda. She saw appellant, an inmate, in the room and thought it unusual for him to be there. She went to press the intercom button to report him, but appellant, from behind, dragged her into the men's rest room.

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

In the rest room, appellant sat on Coleman's stomach and told her that he was going to sodomize her. Coleman began to hit appellant with her fists. Appellant then said he was going to have sexual intercourse with her. Coleman fought again. Appellant tried to remove Coleman's pants and she struggled with him. Coleman grabbed appellant's genitals and wrung them. Appellant jumped off of her. He told her to kiss him and she refused. Appellant left the rest room and told Coleman that if she told anyone what happened, he would say that she had "come on" to him.

Coleman was treated for wounds to her lips, gums, and arm. She suffered high blood pressure, which caused a mild stroke in her eye, and she missed five months from work. Appellant suffered scratches to his face during the attack.

## II. Exclusion of Jurors for Cause

During voir dire, juror Fields stated that he was acquainted with Coleman. Fields had purchased a car from a dealership where Coleman had worked. Fields stated that these contacts would not influence his fairness or impartiality to serve on the jury.

The fact that juror Fields was acquainted with Coleman was not a basis for his exclusion for cause. Neither was the fact that Fields purchased a car from a dealership where Coleman had worked, there being nothing in the record to show that Coleman had anything to do with the transaction. The trial court found Fields to be impartial and free from prejudice. We find no error in this holding.

On brief, appellant argues that Fields should have been

removed from the jury because he previously had been represented by the prosecutor in the case. However, appellant did not make this argument in the trial court and thus is barred by Rule 5A:18 from raising the issue for the first time on appeal. See Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).

The record indicates that juror Powell was employed by the Greensville Correctional Center and knew Coleman only on a speaking basis. Juror Powell stated that these facts would in no way influence her in her decision. The trial court found Powell to be impartial and we find no error in this decision.

Juror Mason stated that she knew the victim through her employment at Greensville Correctional Center. They did not socialize or visit each other's homes. Mason ran a store, and the victim, Linda Coleman, was a customer of the store. She stated that these relationships would not influence her fairness and impartiality in the case. The trial court refused to strike Mason for cause. We find no error in this decision.

Juror Manning stated that she had heard about the incident from her son, who works at Greensville Correctional Center, but she did not recall the details of the conversation. She stated that what she heard would not influence her fairness and impartiality. The trial court refused to strike Manning for cause. We find no error in this decision.

At trial, appellant asked the trial court to excuse jurors Fields, Powell, Mason and Manning for cause because "they have family or know somebody that works at Greensville or

knows somebody that knows somebody that works at Greensville or have direct contact with this officer here."

Per se presumptions of juror bias are not favored in Virginia. See Webb v. Commonwealth, 11 Va. App. 220, 222, 397 S.E.2d 539, 540 (1990). The grounds for automatic disqualifications are few.[1] Employment by a juror at the correctional facility where the accused is an inmate charged with a crime against a correctional officer does not require automatic disqualification of the juror. See Williams v. Commonwealth, 21 Va. App. ___, ___, ___ S.E.2d ___, ___ (1996) (en banc). Absent the existence of a per se basis for exclusion, rulings on the qualifications of jurors are committed to the sound discretion of the trial court. Barker v. Commonwealth, 230 Va. 370, 375, 337 S.E.2d 729, 733 (1985).

An appellate court must defer to the trial court's decision "to exclude or retain prospective jurors" because the trial court has observed the jurors "and is in a better position" than the appellate court to determine if a juror's performance would be impaired. Stewart v. Commonwealth, 245 Va. 222, 234, 427 S.E.2d 394, 402, cert. denied, 114 S. Ct. 143 (1993). "Accordingly, a trial court's decision on these issues will not be reversed on appeal without a showing of 'manifest error.'" Id. (quoting

---

[1] See Barker v. Commonwealth, 230 Va. 370, 375, 337 S.E.2d 729, 733 (1985) (automatic disqualification required based on juror's knowledge that defendant previously had been convicted for same offense for which he was being retried); Gray v. Commonwealth, 226 Va. 591, 593, 311 S.E.2d 409, 410 (1984) (automatic disqualification required based on juror's kinship to victim in case); Salina v. Commonwealth, 217 Va. 92, 93, 225 S.E.2d 199, 200 (1976) (automatic disqualification required based on juror's stockholding in victim bank).

Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990), cert. denied, 502 U.S. 824 (1991)).  See also Weeks v. Commonwealth, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994), cert. denied, 116 S. Ct. 100 (1995).

Furthermore, prospective jurors need not be totally ignorant of the facts and issues involved in a case.  It is sufficient that they can set aside any impression or opinion and decide the case solely on the evidence presented at trial.  Pope v. Commonwealth, 234 Va. 114, 124, 360 S.E.2d 352, 358 (1987), cert. denied, 485 U.S. 1015 (1988).  In denying appellant's challenge to the jurors, the court stated that, based on the voir dire, the court believed that the jurors in question could "take the oath" of a juror and "act accordingly," if selected for jury service. On this record, and giving due deference to the trial court's observations and beliefs, we cannot say that the court committed manifest error in denying appellant's requested strikes for cause.

### III. Consent Instruction

Appellant also contends that the court erred in refusing his proffered consent instruction.  Although the Commonwealth prevailed in the trial court, we must review the evidence relevant to appellant's refused instruction in the light most favorable to him.  Martin v. Commonwealth, 13 Va. App. 524, 526, 414 S.E.2d 401, 401 (1992) (en banc).

An accused, however, "is entitled to have the jury instructed only on those theories of the case that are supported by evidence."  Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d

-5-

267, 280 (1986).  "The evidence relied on to support a proffered instruction must amount to 'more than a scintilla.'"  Morse v. Commonwealth, 17 Va. App. 627, 633, 440 S.E.2d 145, 149 (1994) (quoting Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978)).  An instruction inapplicable to the facts and circumstances of the case should not be given.  Hubbard v. Commonwealth, 243 Va. 1, 16, 413 S.E.2d 875, 883 (1992).

Inmate Kenneth Jackson testified on behalf of appellant that he heard appellant talking to Officer Coleman in the snack area.  Appellant came to him and asked him for one hundred dollars cash "because he needed it because him and Ms. Coleman was supposed to meet in the bathroom.  So, I gave him the money.  That's all I know."  Jackson said it was supposed to be money for sex.  He explained that the scratches on appellant's face and mouth occurred while he and appellant were "horse playing."

Appellant testified that he procured the money from Jackson before he had spoken to Ms. Coleman about sex because he knew her reputation.  He described the incident as follows:

> I was waving to her and she looked.  She noticed me.  She came out.  There's a door right here and she came out of the control booth and left the other officer there.  She came to this door and popped it and we talked.  At that point, I had some money on me and flashed it at her and stated to her what I wanted to do with the money.  I mean, I didn't have to put into exact words because I know and she knows what's up.
>
> After we got that straight.  She told me to hold on, I'll be right back.  She shut the door and went back in the booth.  So, I waited and waited.  She come back out the door about five minutes later she come out and come on back there to where I was in the bathroom.  Now, we're in the bathroom and I gave her the money that we had agreed on, a fifty-dollar bill, two twentys and a

> ten. . . . She says to me, hold on, I got to go check because some inmates was in the visiting room. . . . She's talking about going and checking and I says, no, I done gave you my money so you just give me my money back and I'll leave. . . .
>
> When she tried to leave out the bathroom, I grabbed her hand that she had my money in, that she had already took. I took the money back and opened the door and left and when I left the bathroom, she was still in the bathroom. . . .

Appellant presented no evidence that there was any attempt made to perform any sexual acts.

Under these facts, appellant contends that the trial court erred in refusing to give his proffered consent instruction. We find no evidence in the record to support the giving of a consent instruction.

The issues raised by the Commonwealth's evidence are simple ones; namely, whether appellant was guilty of attempted rape, attempted sodomy, bodily injury, and willful injury to a correctional facility employee. Appellant denies that he did these things. His evidence does not suggest that the offenses with which he was charged were commenced, much less completed. His evidence does not show that he touched the correctional officer in order to have consensual sex. According to appellant's testimony, as soon as he handed Coleman one hundred dollars, she said she had to leave to check her post. Appellant's only acts toward the victim, according to him, were his attempts to retrieve his money from her hand. Under appellant's theory of the case, no sexual overtures or touching occurred. The trial court did not err in refusing a consent instruction because there was no evidence to support it.

Accordingly, the judgment of the trial court is affirmed.

                              Affirmed.

BENTON, J., dissenting.


For the reasons stated in the dissenting opinion to <u>Williams</u> <u>v. Commonwealth</u>, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1996) (Elder, J., and Benton, J., dissenting), I would hold that the two jurors who were employed in the penitentiary were disqualified from the jury because Langston was being tried for an offense, willful injury to a correctional facility employee in violation of Code § 18.2-55, that was unique in its protection of correctional facility employees.  <u>See</u> <u>Williams v. Commonwealth</u>, 19 Va. App. 600, 453 S.E.2d 575 (1995), <u>rev'd</u> <u>en banc</u>, ___ Va. App. ___, ___ S.E.2d ___ (1996).