**Richmond**

ALAN RAY CALHOUN, JR.

V.

COMMONWEALTH OF VIRGINIA

October 14, 1983.

Record No. 821613.

Present: Carrico, C.J., Cochran, Compton, Stephenson, Russell, and Thomas, JJ., and
Gordon, Retired Justice.

*Jonathan S. Kurtin; Harvey S. Lutins (Lutins and Shapiro,* on briefs), for appellant.

*Jacqueline G. Epps, Senior Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In a jury trial, Alan Ray Calhoun, Jr., was convicted of attempted first-degree murder and use of a firearm in the commission of a felony. His punishment was fixed at 10 years and one year, respectively. During jury *voir dire*, Calhoun challenged five veniremen for cause. He claimed three were not impartial due to their prior knowledge of the offense. The other two were challenged because of previous attorney-client relationships with the Commonwealth's Attorney. The trial court overruled Calhoun's objections, and he appeals.

■ An accused has a constitutional right to trial "by an impartial jury." U.S. Const. amends. VI and XIV; Va. Const. art. I, § 8. A juror must "stand indifferent in the cause," Code § 8.01-358, and a venireman must be excluded if the trial court entertains a reasonable doubt as to his qualifications. *Justus* v. *Commonwealth*, 220 Va. 971, 976, 266 S.E.2d 87, 90 (1980); *Breeden* v. *Commonwealth*, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

■ To assure an impartial jury, however, the trial court is not required to exclude all veniremen who have any preconceived opinion of the case. *L. E. Briley* v. *Commonwealth*, 222 Va. 180, 185-86, 279 S.E.2d 151, 154 (1981).

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin* v. *Dowd*, 366 U.S. 717, 722-23 (1961) (citations omitted).

■ Whether a venireman can lay aside a preconceived opinion and render a verdict solely on the evidence is a mixed question of law and fact. Resolution of the question rests within the sound discretion of the trial court. *Martin* v. *Commonwealth*, 221 Va. 436, 271 S.E.2d 123 (1980). Since the court observes the venireman, its finding is entitled to great weight and will not be dis-

turbed on appeal unless manifest error exists. *L.E. Briley*, 222 Va. at 185, 279 S.E.2d at 154.

In *L. E. Briley*, two veniremen familiar with various news accounts made *voir dire* responses indicating preconceived opinions of Briley's guilt. *Id.* at 182, 279 S.E.2d at 153. Relying solely on these responses, Briley contended the trial court erred in refusing to strike them for cause. *Id.* Other responses by these veniremen, however, revealed that they understood the presumption of innocence, that the defendant bore no evidentiary burden, and that the Commonwealth was required to prove guilt beyond a reasonable doubt. *Id.* Moreover, neither prospective juror had formed a final opinion. *Id.* at 187, 279 S.E.2d at 155. We noted that their brief statements reflecting some preconceived opinion of guilt "must be read in context with the entire transcript of the *voir dire*," and we concluded, from such a reading, that the trial court's ruling was not manifest error. *Id.* at 182, 279 S.E.2d at 152.

In the present case, Joyce Morgan recalled reading a newspaper account of the incident. When asked if she would require evidence to disprove the fact that a shooting had occurred, she responded affirmatively. On the other hand, she did not know the identity of the suspect, and she had not formed an opinion concerning Calhoun's guilt. Moreover, she acknowledged that the defendant was presumed innocent and the Commonwealth had the burden of proving every element of the offense beyond a reasonable doubt. She stated emphatically, at least five times, that she could ignore what she had read and decide the case solely on the evidence. Therefore, considering the entire transcript of Morgan's *voir dire*, we find Calhoun's challenge meritless.

In support of his contention that Edith Looney and Gladys Rowan were unqualified, Calhoun relies strongly on *Breeden* v. *Commonwealth*, 217 Va. 297, 227 S.E.2d 734 (1976). His reliance is misplaced. In *Breeden*, we held that a venireman who persisted in the belief that the defendant must prove his innocence was not impartial. 217 Va. at 300, 227 S.E.2d at 737. In the present case, however, both Looney and Rowan acknowledged that the defendant was presumed innocent and the Commonwealth had the burden of proving guilt beyond a reasonable doubt.

Looney informed the trial court that, although she had heard about the case on television, she had not formed any fixed opinion about the matter and would be impartial. She had heard "the game warden had been shot at" and someone named "Calhoun"

had done the shooting. When asked if generally what she hears on television is "what has happened," she said, "Yes." She also responded affirmatively when asked if "it would take some evidence . . . to show that is not what happened." Looney asserted, however, that she could find the defendant not guilty if the Commonwealth proved "all of the case but one tiny portion of it." Finally, she told the court she could disregard any prior knowledge and render a verdict solely on the evidence and the court's instructions.

Had Looney remained fixed in her opinion that what she heard on television was what had happened (that a man named Calhoun had shot a game warden), quite obviously she could not stand indifferent in the cause. A full reading of her *voir dire* discloses, however, that she could disregard what she had heard and render a verdict solely on the evidence and the court's instructions.

Gladys Rowan admitted reading newspaper accounts concerning the incident but did not remember who was accused of shooting at the game warden, and had no fixed opinion about the defendant's guilt or innocence. Although Rowan replied affirmatively when asked whether she would be able to ignore what she had read and render a verdict based solely on the evidence and instructions, she expressed a general unwillingness to serve on the jury, demonstrated by the following answers:

> [DEFENSE COUNSEL:] If you were on trial, would you be satisfied to be tried by a Juror who knew what you know about the case and whose answers to these questions would have been what your answers are?
> [ROWAN:] Probably not.
> [DEFENSE COUNSEL:] If, from your experiences and from what you have read and so on, if you had the feeling that certain facts either exist or probably exist, but the facts had not actually been proven by the evidence you heard right here in the courtroom, would you be able to put aside your belief and decide this case only on the evidence you heard right here?
> [ROWAN:] Yes; I think so. But, I would really prefer not to be on this.

The defendant found the following portions of Rowan's *voir dire* particularly objectionable:

[COURT:] Now, the Court is going to assume you are impaneled. The Court will instruct that the Defendant is presumed innocent until each and every element of the offense is proven beyond a reasonable doubt.

Do you feel that you could follow that instruction without any problems?

[ROWAN:] Probably so.

[COURT:] Probably is not good enough.

[ROWAN:] Okay; yes.

[COURT:] Yes is the answer?

[ROWAN:] Yes.

. . .

[DEFENSE COUNSEL:] If the Commonwealth proved all but one little tiny technical point, would you be as satisfied voting for an acquittal as you would for a conviction?

[ROWAN:] I do not know; I am not very good on this stuff at all.

[COMMONWEALTH'S ATTORNEY:] Perhaps we are leading this individual in a vacuum. Perhaps if she were aware of what the law is, it would assist her in answering the question as to what she would have to do.

[COURT:] I have already asked you the question; I told you I was going to instruct you. The Defendant is presumed to be innocent; the Commonwealth has the burden of proving beyond a reasonable doubt each and every element of the offense.

I asked you if you could follow that instruction, if it gave you any problems, and you said no. Now, this question is asking the same question in another way.

[DEFENSE COUNSEL:] So, if there are four elements to the crime, and if you are generally satisfied that there was some shooting that night, but one of those technical elements is not proven, would you be as willing to vote for an acquittal as you would for a conviction?

[ROWAN:] I do not know; I do not know how I would answer that for sure.

Rowan later stated, however, that she "would rather not have any doubts" that the Commonwealth had proven all the elements, and she would remain firm in her vote for acquittal if she was uncon-

vinced, regardless of pressure from other jurors. Rowan's understanding of burden of proof is clear from the following exchange:

> [COMMONWEALTH'S ATTORNEY:] If, in fact, the Commonwealth is unable to prove one of those elements beyond a reasonable doubt and the Court instructs you that the person is to be found not guilty if they cannot find all the elements, do you feel you would find the Defendant not guilty if all the elements were not proven beyond a reasonable doubt?
>
> [ROWAN:] Would I find him not guilty?
>
> [COMMONWEALTH'S ATTORNEY:] Yes.
>
> [ROWAN:] Probably, if they all were not proved.
>
> [COMMONWEALTH'S ATTORNEY:] Do you understand the burden is on the Commonwealth to prove everything beyond a reasonable doubt?
>
> [ROWAN:] Yes.

As previously noted, Rowan had not formed an opinion concerning guilt. A full reading of her transcript indicates she could lay aside what she had read and "decide this case only on the evidence." She also acknowledged the defendant was presumed innocent and the Commonwealth had the burden of proving every element of the offense beyond a reasonable doubt. Her obvious reluctance to serve as a juror was not a basis for disqualification.

The Attorney General conceded in oral argument that exclusion of Looney and Rowan would have been the wiser course, and we agree. Nevertheless, applying the "full reading" test, we do not find the trial court's rulings manifestly erroneous.

■ Calhoun also challenged two prospective jurors who were former clients of the Commonwealth's Attorney in his capacity as a private practitioner. One venireman had engaged the attorney to draft his will, but the attorney was neither executor nor trustee under the will. The attorney represented the other venireman in a personal injury case. The *voir dire* of each venireman clearly indicated a freedom from any bias or prejudice and a willingness to base his verdict solely on the evidence and the court's instructions. Nevertheless, Calhoun contends that a prior attorney-client relationship with the Commonwealth's Attorney is cause for disqualification. He argues that the rationale of *Salina* v. *Common-*

*wealth*, 217 Va. 92, 225 S.E.2d 199 (1976), supports his contention. We do not agree.

In *Salina*, we held that a stockholder in a bank which was the victim of an offense could not stand indifferent as a juror because "the criminal act suffered by the corporation has the direct effect of diminishing the assets of the corporation held for the benefit of its stockholders." *Id*. at 94, 225 S.E.2d at 201. In the instant case, however, no present relationship existed between the veniremen and the Commonwealth's Attorney, and we will not adopt a *per se* rule disqualifying a prospective juror solely on the ground that sometime in the past the Commonwealth's Attorney had represented him.

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*